UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CALEB LANDIS, Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 25-394-DCR |
| V. | ) ) ) | |
| DJGN LEXINGTON, LLC, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Caleb Landis, Brandon Zimmerman, and Matthew Smith (collectively, "the plaintiffs" or "the named plaintiffs") and Defendants DJGN Lexington, LLC, DJGN Bowling Green, LLC, Ricci Culinary Holding Company, LLC, Ricci Culinary Management Group, LLC, DJGN LLC, DJGN Indy, LLC, and Tony Ricci (collectively, "the defendants") have entered into a proposed class and collective action settlement agreement (the "Settlement"). [Record No. 55-1] The plaintiffs have filed an unopposed motion seeking to: (1) certify the settlement classes for settlement purposes only; (2) appoint the named plaintiffs as class representatives for settlement purposes only; (3) appoint David W. Garrison, Joshua A. Frank, and Nicole A. Chanin of Barrett Johnston Martin & Garrison, PLLC as Class Counsel for settlement purposes only; (4) grant preliminary approval of the Settlement, including the proposed notice form and notice procedures; and (5) schedule a Fairness Hearing for final approval of the Settlement and set deadlines for motions for final approval and for attorneys' fees, costs and expenses.  [Record No. 55]   Following full consideration, the motion will be granted under the terms outlined below.

- 1 -

## I.

The First Amended Collective and Class Action Complaint consolidates the claims asserted in this action and two related actions. [Record No. 38] Plaintiff Landis filed this case on behalf of similarly situated employees at Tony's Steak & Seafood ("Tony's") restaurants in Lexington and Bowling Green, Kentucky. [Record No. 1] Plaintiff Zimmerman filed a related matter, *Zimmerman v. DJGN LLC, et al.*, No. 1:25-cv-00729-MWM (S.D. Ohio) (hereafter, "*Zimmerman*"), on behalf of similarly situated employees at a Tony's restaurant in Cincinnati, Ohio. [Record No. 38 at ¶ 6] Plaintiff Smith filed another related matter, *Smith v. DJGN Indy, LLC, et al.*, No. 1:25-cv-02221-JRS-MJD (S.D. Ind.) (hereafter, "*Smith*"), on behalf of similarly situated employees at a Tony's restaurant in Indianapolis, Indiana. [*Id.*]

The parties in this action, in *Zimmerman*, and in *Smith,* resolved the plaintiffs' claims through formal mediation. [Record No. 36] As part of the Settlement, the parties agreed to seek approval with this Court. [*Id.*] The plaintiffs then filed a First Amended Collective and Class Action Complaint to assert in a single proceeding all claims raised in this action, as well as in *Zimmerman*, and in *Smith*. [Record No. 38 at ¶ 7] They executed a written agreement resolving the claims asserted by the plaintiffs against the defendants that own and operate the Tony's restaurant chain in Kentucky, Ohio, and Indiana. [Record No. 55-1]

The plaintiffs asserted claims under the Fair Labor Standards Act ("FLSA") and wage-and-hour laws of Ohio, Kentucky, and Indiana. [Record No. 38] These claims arise from alleged uniform pay practices applied to servers at the defendants' restaurants in Lexington and Bowling Green, Kentucky; Cincinnati, Ohio; and Indianapolis, Indiana. [*Id.*] Specifically, the plaintiffs allege that defendants violated the FLSA and applicable state laws by requiring servers to share a portion of their earned customer tips with back-of-house employees who do

not interact with customers; namely, service bartenders (also referred to as "server bartenders"). [*Id.* at ¶¶ 60–63]

The plaintiffs contend that servers were paid a sub-minimum tipped hourly rate plus customer tips, and that defendants used those tips to compensate service bartenders. [Record No. 38 at ¶¶ 60–64] According to the plaintiffs, service bartenders working in back-of-house roles, did not interact with customers, and prepared drinks for servers to deliver to customers. [*Id.* at ¶ 63] Based on these allegations, the plaintiffs claim they and similarly situated employees are entitled to unpaid and underpaid minimum and overtime wages; prejudgment and post-judgment interest; liquidated and treble damages; and statutory penalties under the FLSA, the Kentucky Wages and Hour Act ("KWHA"), the Ohio Wage Laws[1], and the Indiana Wage Payment Statute ("IWPS"). They also seek attorneys' fees, costs, and expenses. [*Id.* at 25] The parties contend that the Settlement will resolve all these claims.

## II.

The plaintiffs assert their state law claims on a class basis under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and other current and former servers who were subject to the challenged uniform pay practice. The Settlement defines three proposed Rule 23 settlement classes (collectively, the "Rule 23 Classes"):

> All current and former Servers paid less than minimum wage plus tips at Defendants' Bowling Green and/or Lexington, Kentucky restaurant(s) at any time from October 21, 2022, through February 24, 2026, for FLSA and for Kentucky state law claims;

---

[1]   The plaintiffs' Collective and Class Action Complaint defines the "Ohio Wage Laws" to include the Ohio Minimum Fair Wage Standards Act ("the Ohio Wage Act"), O.R.C. §§ 4111, et seq., the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, and the Ohio Constitution, Oh. Const. Art. II, § 34a. [Record No. 38 at ¶ 3]

(the "Rule 23 Kentucky Class"); and

> All current and former Servers paid less than minimum wage plus tips at Defendants' Cincinnati, Ohio restaurant at any time from October 9, 2022, through February 24, 2026, for Fair Labor Standards Act ("FLSA") and Ohio state law claims;

(the "Rule 23 Ohio Class");

> All current and former Servers paid less than minimum wage plus tips at Defendants' Indianapolis, Indiana restaurant at any time from October 29, 2023, through February 24, 2026, for Indiana state law claims;

(the "Rule 23 Indiana Class"). [Record No. 55-3 at 3 (citing Record No. 55-1 at ¶ 2.6 (defining "Class Members")]

The Rule 23 Classes include 155 servers, including, but not limited to, the named plaintiffs and current opt-in plaintiffs who have already asserted claims in this action by filing the FLSA consent forms pursuant to 29 U.S.C. 216(b). [Record No. 55-1 at ¶¶ 2.6, 2.14 (defining "FLSA Collective Action Members")] The FLSA collective action consists of forty-six Class Members who opted into the actions that the parties agreed to litigate in this case. [*Id.* at ¶¶ 2.14, 4.3.1.1; pgs. 34–35] The FLSA Collective Action Members include certain Kentucky, Ohio, and Indiana Class Members. [*Id.*] Under the Settlement, the FLSA Collective Action Members qualify as approved claimants and therefore do not need to submit a claim form to be entitled to a settlement award. [*Id.* at ¶¶ 2.2, 2.14]

The plaintiffs contend that the release is narrowly tailored to Rule 23 and the FLSA claims at issue. [Record No. 55-3 at 4] For opt-in plaintiffs and Rule 23 Class Members, the release applies only to "shifts worked as servers covered by Defendants' data production." [*Id.* (quoting Record No. 55-1 at ¶ 4.2.1)] It is further limited to the period covered by that data, rather than extending through the present. [*Id.* (citing Record No. 55-1 at ¶ 4.2.1)] State-law

- 4 -

wage claims are released for all named plaintiffs and Rule 23 Class Members; however, only individuals who affirmatively opt in by filing an FLSA consent form—either before notice or through the settlement notice process—will release FLSA claims.  [*Id*. (citing Record No. 55-1 at ¶ 4.2.1)]

The Settlement provides that the defendants will pay $750,000 into a common fund. [Record No. 55-1 at ¶ 2.15] The common fund will cover payments to Rule 23 Class Members, attorneys' fees and costs, settlement administration expenses, and service awards to class representatives.  [*Id.* at ¶ 2.17] The defendants will pay the employer's share of payroll taxes and related withholdings separately, in addition to the common fund.  [*Id.* at ¶¶ 2.11, 2.15, 4.3, 4.3.6.3] The plaintiffs will seek up to one-third of the fund for attorneys' fees ($250,000), and the Settlement contemplates that the out-of-pocket costs and claims administration expenses will be paid from the fund (estimated at $23,000).  [*Id.* at ¶¶ 2.15,2.17, 4.3, 4.3.4] In addition, each named plaintiff will receive a $5,000 service award and general release payment (totaling $15,000) from the common fund.  [*Id.* at ¶¶ 2.17, 4.3.2] The remaining portion of the $750,000—after deducting requested attorneys' fees and costs, estimated administration expenses, and the proposed service awards to class representatives—will be available to Rule 23 Class Members to claim (estimated at $462,000).  [*See id*. at ¶ 2.15.]

According to the Settlement, the Rule 23 Class Members who submit claim forms, along with individuals who have already filed FLSA consent forms, will receive *pro rata* shares of the remaining funds based on the number of qualifying shifts worked during which their tips were shared with service bartenders, as reflected in the defendants' pay data.  [*Id.* at ¶¶ 2.15, 2.17, 4.3.1; pgs. 34–39] Each payment will be allocated fifty percent as wages subject

to withholdings and fifty percent as liquidated damages not subject to withholdings.  [*Id*. at ¶ 4.3.6.1]

### III.

The claims of "a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  The parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Fed. R. Civ. P. 23(e)(1)(A).  In reviewing the parties' submissions, the court must decide two issues: (1) whether it will "likely be able" to "certify the class for purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1)(B)(ii); and (2) whether it will "likely be able to approve the proposal under Rule 23(e)(2)," Fed. R. Civ. P. 23(e)(1)(B)(i).  If the answer to both questions is yes, the court must "direct notice" of the proposal to "all class members who would be bound" by it.  Fed. R. Civ. P. 23(e)(1)(B).

After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

### A.    The Court Will Likely Be Able to Certify the Proposed Classes.

### 1.    The Plaintiffs Have Shown that Rule 23(a) is Likely to be Satisfied.

At this stage of proceedings, the court must ensure that there is a basis to conclude that class certification is likely to be granted following a final approval hearing.  *See* Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendments.  There are four prerequisites for class certification under Rule 23(a): numerosity; commonality; typicality; and adequacy of representation.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  And while Rule 23 has no express "ascertainability" requirement, the Sixth Circuit has held that the class

description must be sufficiently definite such that "it is administratively feasible for the court to determine whether a particular individual is a member." *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)).

**Numerosity**: Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Within this circuit, "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir.1996)); *see Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 WL 1031008, at *10 (W.D. Ky. Mar. 17, 2021) ("[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." (alteration in original) (quoting *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020)).

Here, the proposed Rule 23 Classes include 155 total members: 77 in the Rule 23 Kentucky Class, 36 in the Rule 23 Ohio Class, and 42 in the Rule 23 Indiana Class. [Record No. 55-1 at ¶ 2.6.] Although the Ohio class falls slightly below the 40-member benchmark, the plaintiffs argue that numerosity is satisfied because courts may also consider factors such as fear of retaliation and litigation hardship when determining whether joinder is impracticable. [Record No. 55-3 at 9–10] In support, they cite *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) ("in employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied"), and *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (considering litigation hardship in the numerosity

analysis). Based on these authorities, the Court finds that the plaintiffs have sufficiently shown that all three proposed classes satisfy Rule 23's numerosity requirement.

**Commonality**: The plaintiffs also have demonstrated that there are questions of law or fact common to the proposed class. As this Court has previously observed, "[t]he commonality test is qualitative, rather than quantitative," and "there need be only a single issue common to all members of the class.'" *Peck v. Air Evac EMS, Inc.*, 2019 WL 3219150, at *3 (E.D. Ky. July 17, 2019) (quoting *In re American Medical Sys.*, 75 F.3d at 1080). The common question presented in this action is whether service bartenders at Tony's restaurants were improperly included in the server tip share in violation of the FLSA and the applicable state wage-and-hour laws. According to the plaintiffs, all members of the proposed class were subject to the same pay practices at the defendants' restaurants. The requirement, therefore, is satisfied for preliminary approval purposes.

**Typicality**: Next, the plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are typical when they arise "from same event or practice or course of conduct that gives rise to the claims of other class members, and if [the representatives'] claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Green v. Platinum Rests. Mid-Am., LLC*, 333 F.R.D. 102, 110 (W.D. Ky. 2019). In this proceeding, the plaintiffs challenge a single practice; that is, requiring servers to share a portion of their customer tips with back-of-house employees, specifically services bartenders, at the Tony's restaurant where they worked. Each named plaintiff worked at a location in the same state as the Class Members they seek to represent. Their claims arise from the same alleged conduct and present the same legal questions: whether the practice violates Ohio, Kentucky,

or Indiana law under a common legal theory applicable to all Class Members, including the named plaintiffs. Thus, the named plaintiffs have sufficiently established that their claims are typical of the potential Class Members.

**Adequacy of Representation**: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives must meet two criteria: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). These requirements ensure that the representatives' interests are "aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852-53 (6th Cir. 2013). Ultimately, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

The named plaintiffs satisfy both requirements under Rule 23(a)(4). The named plaintiffs and putative Class Members seemingly have a "common goal of maximizing recovery for the class," and there is no apparent conflict between them. *See Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 268 (E.D. Ky. 2009). Counsel report that the plaintiffs have "vigorously pursued the claims at issue." [Record No. 55-4 at ¶ 15] That assertion appears to be accurate, based on the named plaintiffs' participation in the case thus far, which has included the provision of information, cooperation with counsel, attendance at mediation, and consultation regarding settlement proposals. [*Id.*] Although the named

plaintiffs will receive service awards under the Settlement, such awards are not prohibited under Sixth Circuit precedent, and they are relatively modest in this case. *See Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. Jan. 14, 2021) (approving $10,000 service award for plaintiffs who searched for and produced records for discovery, and traveled for depositions); *Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (approving $5,000 service award for named plaintiff against former employer who produced documents, collaborated with class counsel, and participated in mediation).  Accordingly, the plaintiffs have sufficiently demonstrated that the named plaintiffs are adequate, and the Court will appoint them as class representatives.

The Court also must determine whether the proposed class counsel are adequate before their appointment.  Rule 23(g) of the Federal Rules of Civil Procedure sets forth the following criteria for determining whether this requirement is satisfied:

> (i)   the work counsel has done in identifying or investigating potential claims in the action;
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv)  the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A).  The rule also directs that "[c]lass counsel must fairly and adequately represent the interests of the class."  Fed.R.Civ.P. 23(g)(4).

Plaintiffs' counsel, David W. Garrison, reports that proposed class counsel "have expended considerable time, effort, and expense litigating this action."  [Record No. 55-4 at ¶ 16] Their work has included communicating regularly with dozens of employees who contacted them about claims against the defendants; investigating and filing multiple cases; litigating in several jurisdictions; preparing for mediation over several months; attending a

full-day mediation with mediator Jerome Weiss; negotiating a binding term sheet; consolidating pending claim in this Court; and, in the weeks following mediation, negotiating a final settlement agreement and seeking class certification and approval of the parties' settlement. [*Id.*] The plaintiffs also demonstrate that each proposed class counsel (*i.e.*, David W. Garrison, Joshua A. Frank, and Nicole A. Chanin) and their law firm (Barrett Johnston Martin & Garrison, PLLC) possess substantial knowledge and experience in complex class and collective actions, including cases alleging violations of the FLSA and state wage-and-hour laws. [*Id.* at ¶¶ 2–13] The Court finds that these attorneys will fairly and adequately represent the interests of the classes and will appoint them as Class Counsel in this matter.

**Ascertainability**: Finally, for a class to be ascertainable, the proposed definition must be precise and objective and must not rely on subjective factors such as a class member's state of mind. *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636, at *5 (N.D. Ohio July 21, 2015). Here, the plaintiffs propose three state-specific classes, each defined as all current and former servers who were paid less than minimum wage plus tips at the defendants' restaurant locations in the relevant state during a defined period. [Record No. 55-3 at 3] The defendants' records and information produced in informal discovery readily identify these individuals. [*See* Record Nos. 55-1 at 36–39 and 55-3 at 4.] Thus, each proposed class is sufficiently ascertainable.

In summary, the Court finds that all Rule 23(a) prerequisites are met for the purposes of preliminary certification.

**2.    The Plaintiffs Have Shown that Rule 23(b)(3) is Likely to be Satisfied.**

Next, the Court turns to the *type* of class action involved. A class action may be maintained only if Rule 23(a) is satisfied and one of the types of class actions described in

Rule 23(b) is established.  The plaintiffs assert that they have made a preliminary showing with respect to Rule 23(b)(3).  A class action may proceed under Rule 23(b)(3) when the Court finds

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and
> >
> > (D) the likely difficulties in managing a class action.[2]

Rule 23(b)(3) is "framed for situations in which class-action treatment is not clearly called for," but "individual adjudications would be impossible or unworkable."  *Modern Holdings, LLC v. Corning, Inc.*, 2018 WL 1546355, at *11 (E.D. Ky. Mar. 29, 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)).  To qualify under this provision, "a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at *12 (quoting *Amchem*, 521 U.S. at 615).

---

[2]	The Court need not consider case management or litigation concerns when entertaining a request to certify a class for settlement purposes, as opposed to trial.  *See In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020).

Rule 23(b)(3)'s predominance requirement mirrors Rule 23(a)(2)'s commonality requirement but "contains the more stringent requirement that common issues 'predominate over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* 2009 WL 5184352, at *6 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084). To satisfy the predominance requirement under Rule 23(b)(3), plaintiffs must show that "the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject to only individualized proof." *Id.* (quoting *Beattie*, 511 F.3d at 564). Stated differently, the Court must determine whether the common questions lie "at the heart of the litigation." *Id.* (quoting *Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007)).

Following review the record, the Court is persuaded that the common questions in this case predominate over individual issues. As explained above, this matter centers on a single alleged pay practice, and each class challenges that practice under the applicable state law. The core questions are whether the practice occurred at a particular restaurant and whether it violated the provisions of state law. The required proof focuses on the defendants' conduct rather than the conduct of individual class members and therefore minimally relies on individualized proof. Accordingly, the plaintiffs satisfy Rule 23(b)(3)'s predominance requirement.

Finally, the plaintiffs have demonstrated that a class action is the superior method for fairly and efficiently resolving these claims. Plaintiffs' counsel asserts that, to their knowledge, there are no other pending actions against the defendants brought by or on behalf of servers asserting the same claims. [Record No. 55-3 at 14 (citing Record No. 55-4 at ¶ 17)] Concentrating these claim in this forum is appropriate because one of the Tony's restaurants is located in Lexington, Kentucky, within the Eastern District of Kentucky; the parties agreed

to litigate here to secure relief for all covered employees; all state-law claims arise from the same challenged pay practice; and a class action allows the Court to resolve these similar claims efficiently and consistently.  Therefore, the Court finds the plaintiffs have sufficiently established the superiority requirement.

Preliminary certification of the classes for the purpose of settlement is appropriate in this case.

**B.    The Court Will Likely Be Able to Approve the Proposed Settlement.**

**1.    Fairness, Reasonableness, and Adequacy Considerations Support Preliminary Approval of the Proposed Settlement.**

The Court now turns to the question of whether it will likely be able to approve the proposal under Rule 23(e)(2).  A primary purpose of preliminary approval is to ensure that the settlement is "fair enough" to begin the class-notice process.  *Moeller v. Week Pubs., Inc.*, 649 F. Supp.3d 530, 540 (E.D. Mich. 2023); *In re Papa John's Employee & Franchisee Emp. Antitrust Litig.*, 2023 WL 5997294, at *2 (W.D. Ky. Sept. 15, 2023) (quoting *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich 2020) (assessing "whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections").  In making this determination, courts within the Sixth Circuit consider the overlapping factors articulated in Rule 23(e)(2)(A)-(D) and *Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America v. Gen. Motors Corp. ("UAW v. GMC")*, 497 F.3d 615 (6th Cir. 2007).  In *UAW v. GMC*, 497 F.3d at 631, the Sixth Circuit observed that the following factors also guide the Court's inquiry into whether a proposed class action settlement is fair, reasonable and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration

- 14 -

of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  Additionally, Rule 23(e)(2) prescribes additional factors to determine whether a proposed class action settlement is fair, reasonable, and adequate.

### a.    The *UAW* Factors Support Preliminary Approval.

### i.    The Likelihood of Success on the Merits

The "likelihood of success on the merits" is the most important of the *UAW* factors. *Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *6 (E.D. Ky. May 12, 2020) (citing *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019)).  This is because a court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement.'"  *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)).  "This is not simply an estimation of the plaintiffs' chances of success on the merits, but rather a balancing of the likelihood of success 'against the amount and form of the relief offered in the settlement.'"  *Ware*, 2020 WL 2441415, at *11 (quoting *Deja Vu Servs., Inc.*, 925 F.3d at 895).  "When extinguishing the claims of a large class of people—some of whom may not even be aware that a pending lawsuit affects their rights—courts are required to closely analyze whether the claims that the unnamed class members are giving up are worth the benefits they may receive." *Deja Vu Servs., Inc.*, 925 F.3d at 895.

Because the parties have not engaged in formal discovery or motion practice, it is difficult to gauge the plaintiffs' likelihood of success at trial.  The Settlement nevertheless reflects that the plaintiffs have "taken into account the uncertainty and risk of the outcome of

- 15 -

further litigation" against the defendants, as well as the "difficulties and delays inherent to such litigation." [Record No. 55-1 at ¶ 3.3] The plaintiffs acknowledge that success on the merits is uncertain, particularly given the prospect of litigation in multiple forums. [Record No. 55-3 at 17] To prevail, the plaintiffs would need to prove that the defendants' pay practices violated the FLSA and applicable state wage-and-hour laws and establish each plaintiff's damages with supporting evidence. The plaintiffs also recognize the potential range of recovery absent settlement is uncertain because the defendants' defenses would focus on limiting or reducing any recovery. [*Id.*] As the Sixth Circuit has explained, a settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). Class counsel and the class representatives may therefore "compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*

Although the Court cannot conclude with any certainty the likelihood of success on the merits of the claims, litigation risks remain. Considering the uncertainty surrounding the plaintiffs' likelihood of success, the release of claims, and the relief provided under the proposed agreement, the undersigned concludes that the Settlement is fair, adequate, and reasonable. Thus, this most important *UAW* factor weighs in favor of approving the proposed Settlement.

### ii.    The Risk of Fraud or Collusion

The record also indicates that the parties negotiated the Settlement at arm's length and there is no evidence of fraud or collusion. *See Crawford v. Lexington-Fayette Urb. Cnty. Gov't,* No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008) ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that

- 16 -

there was no collusion between counsel.") (citing *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07CV1999, 2008 WL 3981461, at *18 (N.D. Ohio August 22, 2008)). This is underscored by the parties' use of the assistance of any experienced mediator. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (observing that "participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties"). There is no evidence of collusive activity, and this factor weighs in favor of approving the proposed Settlement.

### iii.    Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and likely duration of continued litigation favor approval of the proposed Settlement. The Sixth Circuit has recognized the complexity of cases involving overlapping FLSA collective claims and state-law class action claims. *See Déjà Vu Servs.*, 925 F.3d at 898. This action presents the same hybrid class and collective wage-and-hour claims. Absent settlement, the parties likely would have continued litigation in multiple forums, resulting in duplicative discovery, increased costs, and the risk of inconsistent outcomes. The plaintiffs also maintain that the parties continue to dispute the merits of the claims and that further litigation would require extensive motion practice and discovery on numerous issues. [Record No. 55-3 at 17] Given the complexity, expense, and likely delay that continued litigation would impose, this factor weighs in favor of approving the proposed Settlement.

### iv.    The Amount of Discovery Engaged in by the Parties

As noted previously, while the parties only have engaged in informal discovery, they exchanged numerous documents and information before mediation. [Record No. 55-4 at ¶ 18]

- 17 -

The defendants produced payroll and timekeeping data for all current opt-in plaintiffs and putative Class Members, allowing the parties to evaluate their respective claims and defenses, assess the scope of potential damages, and understand the risks of continued litigation. [*Id.*] This information likely provided a sufficient base for meaningful settlement negotiations and supports the conclusion that the agreement is reasonable. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) (noting that formal discovery is not necessarily required, so long as the parties have obtained sufficient information to evaluate the relative strength of their positions). The extent of discovery completed supports the fairness, adequacy, and reasonableness of the proposed Settlement.

### v.    The Opinions of Class Counsel and Class Representatives

"The judgment of class counsel that settlement is in the best interest of the class is entitled to significant weight and supports the fairness of the class settlement." *Peck v. Air Evac EMS, Inc.,* No. CV 5:18-615-DCR, 2020 WL 354307, at *6 (E.D. Ky. Jan. 21, 2020). Plaintiffs' counsel, the proposed class counsel, indicate that they "believe the settlement is fair and reasonable" based on their "experience handling similar, complex cases and on the facts and law applicable to the claims asserted in this case." [Record No. 55-4 at ¶ 19] The proposed class representatives also "strongly support and approve" of the proposed Settlement. [*Id.*] The Settlement further states that that the named plaintiffs and their counsel have determined that the agreement is in the best interest of all Class Members. [Record No. 55-1 at ¶ 3.3] As discussed above, the plaintiffs have demonstrated that the proposed class counsel and representative parties have adequately represented the class, that counsel is experienced in the relevant areas of the law and appear to have negotiated the proposed Settlement diligently. This factor supports a finding that the proposed Settlement is fair, adequate, and reasonable.

### vi.    Public Interest

Evaluating the public interest constitutes the last relevant *UAW* factor.[3]  Settlement is a favorable outcome, considering the likely expense and duration of continued litigation.  As this Court has noted before, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."  *Ware*, 2020 WL 2441415, at *14) (quoting *Déjà Vu Servs*., 925 F.3d at 899).  However, courts have also found that enforcing the FLSA furthers an important interest in ensuring that employers comply with federal employment laws.  *Deja Vu Servs., Inc*., 925 F.3d at 899 (citing *Levan v. Sears, Roebuck & Co*., 984 F. Supp. 2d 855, 871 (E.D. Tenn. 2013)).  Overall, this factor supports preliminary approval.

Assuming solely for the purpose of argument that the plaintiffs could prove all asserted claims, the proposed agreement provides substantial benefit to the defendants and weighs against the interest in full enforcement of the FLSA.  Still, the strength of the plaintiffs' claims remains uncertain, and the proposed Settlement reflects a fair, adequate, and reasonable compromise considering that uncertainty.  Approval would also facilitate resolution of this complex litigation and conserve judicial resources.  Therefore, the final factor favors preliminary approval.

Again, in summary, all *UAW* factors weigh in favor of approving the proposed Settlement.  The agreement is generally fair, reasonable, and adequate for the purposes of FLSA and Rule 23 settlements.

---

[3]    The "reaction of absent class members" is not relevant to the preliminary approval stage analysis.

**b.       Additional Rule 23(e)(2) Factors Support Preliminary Approval.**

Rule 23(e)(2) prescribes additional factors relating to the fairness, reasonableness, and adequacy of a class action settlement.  Several of those factors, including whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length," have already been addressed in the analysis above. Fed. R. Civ. P. 23(e)(2)(A)-(B).

The Rule also requires the Court to determine whether "the relief provided for the class is adequate," by considering:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing claim-member claims;

(iii)   the terms of any proposed award of attorney's fees, including time of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

The Court has already addressed the costs, risks, and delay associated with continued litigation.  The proposed distribution method also appears effective.  The Settlement identifies putative Class Members, and establishes procedures for mailing notice, administering opt-in and opt-out procedures, and distributing settlement payments after final certification and approval.  [*See* Record No. 55-1 at 12–16, 30–33, 36–39.]

The third factor requires evaluation of the proposed attorney's fees.  Under Rule 23(h), court may award reasonable attorney's fees and nontaxable costs "authorized by law or the parties' agreement."  In assessing reasonableness, court may apply either the common-fund method or the lodestar method.  *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279-80 (6th Cir. 2016).  The Sixth Circuit "require[s] only that awards of attorney's fees by federal

courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

Here, the parties have agreed to a common fund-based fee not to exceed one-third of the $750,000 common fund ($250,000). One-third of the common fund is a reasonable fee in this case for purposes of Rule 23. Six factors govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class [ ]; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

Although the plaintiffs did not address the second or third factors, the remaining four support a one-third fee award. The Settlement provides the class with prompt and adequate relief, the requested fee would encourage counsel to pursue similar cases without creating a windfall, the litigation involved substantial complexity, and proposed class counsel demonstrated significant skill and experience. And courts within this circuit have also found one-third common fund fee awards reasonable in comparable cases. *See, e.g., Osman v. Grube*, No. 3: 16–cv–00802–JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (finding one-third of a $500,000.00 settlement to be reasonable a reasonable fee in a FLSA collective action); *Thorn v. Bob Evans Farms, Inc.*, No. 2: 12-cv-00768, 2016 WL 8140448, at *2-3 (S.D. Ohio Feb. 26, 2016) (approving a 32.92% fee in a FLSA and Rule 23 settlement agreement); *see also Hebert v. Chesapeake Operating, Inc.*, No. 2: 17-cv-852, 2019 WL 4574509, at *4-8 (S.D. Ohio Sept. 20, 2019) (rejecting a 40% fee award while recognizing 33% as a "typical"

common-fund award in FLSA and class action litigation).  In this case, a one-third common-fund award is reasonable and supports a finding that the proposed Settlement provides adequate relief under Rule 23(e)(2)(C)(iii).

Rule 23(e)(2)(C)(iv) requires consideration of side agreements connected to the proposed agreement, but there does not appear to be any such agreements in this case.

Finally, Rule 23(e)(2)(D) provides that the Court's fairness, reasonableness, and adequacy analysis must account for whether "the proposal treats class members equitably relative to each other."  Here, the proposed agreement treats the class members equitably.

The class members will receive *pro rata* payouts based on the number of qualifying shifts worked during which their tips were shared with service bartenders, as reflected in the defendants' pay data.  [Record No. 55-1 at ¶¶ 2.15, 2.17, 4.3.1; pgs. 34–39] Further, the plaintiffs assert that individuals who previously filed consent forms asserting claims under 29 U.S.C. § 216(b) in any action currently consolidated before the Court will not be required to submit claims forms or take additional steps to participate in the Settlement.  [Record No. 55-3 at 19] Instead, they will automatically receive settlement checks calculated under the formula described above.  [*Id.*]

In summary, the Court finds that the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.  And when viewed together with the *UAW* factor analysis, it appears that fairness, reasonableness, and adequacy considerations support preliminary approval of the proposed Settlement.

### c.      Other Issues Relating to Preliminary Approval

#### i.      Attorney's Fees Under the FLSA

As explained above, the Settlement's attorney-fee award is reasonable for the purposes of Rule 23. And while the *UAW* factors may not have implicated a discussion of the fees as they pertain to the FLSA in this case, a brief discussion is appropriate. "An award of attorney fees to a prevailing plaintiff under [29 U.S.C. § 216(b)] of the FLSA is mandatory, but the amount of the award is within the discretion of the judge." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Courts must award reasonable attorney fees. *Id*. The common-fund approach can be appropriate in cases involving settlement funds paid to a FLSA collective and a Rule 23 class. *See Déjà Vu Servs*., 925 F.3d at 898. For the same reasons the Court found the attorney-fee award reasonable under Rule 23, the Court likewise finds the one-third common-fund award reasonable under the FLSA.

### ii.      Costs

The Settlement also provides for costs to be awarded to the plaintiffs to reimburse counsel's expenses plus settlement administration costs (estimated total of $23,000). [Record No. 55-1 at ¶ 2.17] Like attorney's fees, an award of costs to prevailing parties is mandatory under the FLSA. 29 U.S.C. § 216(b). Here, the estimated costs appear reasonable for purposes of preliminary approval.

### iii.      Service Awards

The Settlement provides for $5,000.00 service awards to Landis, Zimmerman, and Smith for their efforts as named plaintiffs. [Record No. 55-1 at ¶¶ 2.17, 4.3.2] The service award also acts as a general release. [*Id*.] "The Sixth Circuit has not outlined a clear cut rule regarding the propriety of service awards in common fund cases, but it has repeatedly cautioned that such incentive awards should not serve as mere 'bounties' that named plaintiffs should expect to receive in exchange for little commitment and a quick settlement that may

not align with the interests of unnamed plaintiffs." *Ware*, 2020 WL 2441415, at \*17 (citing

*Shane Group, Inc. v. Blue Cross Blue shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016);

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Hadix v. Johnson*, 322 F.3d

895, 897-98 (6th Cir. 2003)).

Courts within the Sixth Circuit have looked at several factors when determining

whether to approve service incentive awards, including:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44-DJH, 2016 WL 7320890, at \*5 (W.D. Ky.

Dec. 15, 2016) (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3: 11-MD-2308-

TBR, 2013 WL 2010702, at \*5 (W.D. Ky. May 13, 2013*); Enter. Energy Corp. v. Columbia*

*Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)); *see also, e.g., M.R. v. Lyon*,

No. 17-11184, 2018 WL 4179635, at 5 (E.D. Mich. Aug. 31, 2018); *Johnson v. W2007 Grace*

*Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at \*14 (W.D. Tenn. Dec. 4, 2015). Here,

the service awards appear justified. The named plaintiffs initiated this action, and as discussed

above, it appears that the unnamed putative collective and class members will likely receive

substantial benefit from the settlement. In addition, as the plaintiffs argue, they have assumed

certain recognized risks and potential stigma by suing their employer in significant class and

collective actions on behalf of all similarly situated employees. [*See* Record No. 55-3 at 21–

22.] Each named plaintiff has also participated in the litigation.

Although counsel's assertions that the named plaintiffs worked diligently on the case

do not, standing alone, justify the award, *see Shane Group, Inc.*, 825 F.3d at 311 (rejecting

- 24 -

"conclusory" arguments that the incentive awards compensated the named plaintiffs for their work and requiring counsel to provide attorney time sheets to prove that the plaintiffs actually worked on the case), the plaintiffs' remaining arguments support modest service awards. Accordingly, the Court finds that the $5,000.00 service awards are reasonable.

### ii.    Approval of Notices and Notice Plan

### a.    The Proposed Notice Satisfies Rule 23(e).

Rule 23(e) mandates that the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). When, as here, the class is to be certified under Rule 23(b)(3), notice must be "the best notice practicable" and include "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must include the following, in "plain, easily understood language:"

(1)    The nature of the action;
(2)    The definition of the class certified;
(3)    The class claims, issues or defenses;
(4)    That a class member may enter an appearance through an attorney if the member so desires;
(5)    That the court will exclude from the class any member who requests exclusion;
(6)    The time and manner for requesting exclusion; and
(7)    The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The parties' proposed plan satisfies these requirements. They have provided a "Notice of Settlement of Class Action Lawsuit," which provides essential information concerning the nature of the class action, defines the class, describes the benefits that are available to class members, explains how to make a claim, and explains claimants' rights to object or opt out.

- 25 -

[Record No. 55-1 at 30–33] The proposed notice plan appears to be the most practicable way to provide individual notice, as the Settlement Administrator, ILYM Group, Inc., "or any other administrator chosen by Class Counsel" will mail the Notice of Settlement and the claim form to all Rule 23 class members. [*Id.* at ¶ 4.8.1] The proposed notice plan also states that the Settlement Administrator will, in addition to mailing, send a copy of the Notice and claim form to the personal email address and telephone number of each Class Member. [*Id.* at ¶ 4.8.3] It also provides for a plan if mail is returned undeliverable and provides that the Settlement Administrator will send a reminder notice *via* mail and email to all Class Members from whom no claim form, request for exclusion, and/or objection has been received. [*Id.* at ¶¶ 4.8.2, 4.8.4]

The Settlement Administrator will establish a toll-free number and email address at which members of the Settlement Class may obtain information or contact the Settlement Administrator. [*See* Record No. 55-1 at 26–33.] The Notice conspicuously alert members of the class of their rights to opt out and object to the Settlement and the time within which they must exercise these rights.[4] [*See id.* at 30–33.]

The information detailed in the proposed Notice is adequate to put the Rule 23 Class member on notice of the proposed Settlement and satisfies the requirement of Rule 23(e)(1).

### b. Notice is Appropriate Under 29 U.S.C. § 216(b).

The FLSA permits plaintiffs to "litigate federal minimum-wage and overtime claims on behalf of other 'similarly situated' employees." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (quoting 29 U.S.C. § 216(b)). However, under §

---

[4]   These dates are blank in the template provided to the Court but presumably will be completed following the issuance of this Memorandum Opinion and Order, based on the dates and deadlines provided in the Settlement. [*See* Record No. 51-1 at ¶¶ 2.21, 4.8.1, 4.8.3; pgs. 30–33.]

216(b), "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Accordingly, "unlike a Rule 23 class action, an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark*, 68 F.4th at 1009 (quoting *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021)). Potential plaintiffs typically "come to learn about the existence of an FLSA suit" through court-facilitated notice. *Id.* at 1007. In *Clark*, the Sixth Circuit adopted a standard for "the showing ... that is necessary for a district court to facilitate notice." *Id*.

Under *Clark*, plaintiffs seeking court-facilitated notice must show a "strong likelihood that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. This standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*. "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id*. at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019)).

In this matter, the potential opt-in plaintiffs are similarly situated to the named plaintiffs because they performed the same role and were subject to the same alleged FLSA-violating pay practices. Specifically, the plaintiffs assert that they worked in the same position and that the defendants had a policy of improperly using servers' earned tips to compensate service bartenders. [Record No. 55-3 at 23] The plaintiffs have demonstrated a strong likelihood that the potential opt-in plaintiffs are similarly situated for purposes of issuing notice under §

- 27 -

216(b).  As a result, the notice plan will be approved, and the parties will be directed to begin providing notice according to dates and deadlines set forth in the Settlement.

**IV.**

Based on the foregoing discussion and analysis, it is hereby **ORDERED** as follows:

1.      The plaintiffs' unopposed motion [Record No. 55] is **GRANTED**.

2.      The Rule 23 Classes are **PRELIMINARILY CERTIFIED** under Rule 23(b)(3) for settlement purposes only.

3.      The Rule 23 Classes are defined, for settlement purposes only, as

i.      Kentucky Class: All current and former Servers paid less than minimum wage plus tips at Defendants' Bowling Green and/or Lexington, Kentucky restaurant(s) at any time from October 21, 2022, through February 24, 2026, for FLSA and for Kentucky state law claims;

ii.      Ohio Class: All current and former Servers paid less than minimum wage plus tips at Defendants' Cincinnati, Ohio restaurant at any time from October 9, 2022, through February 24, 2026, for FLSA and Ohio state law claims; and

iii.      Indiana Class: All current and former Servers paid less than minimum wage plus tips at Defendants' Indianapolis, Indiana restaurant at any time from October 29, 2023, through February 24, 2026, for Indiana state law claims.

4.      Named Plaintiff Brandon Zimmerman is **APPOINTED** as the class representative of the Rule 23 Ohio Class for settlement purposes only.  Named Plaintiff Caleb Landis is **APPOINTED** as the class representative of the Rule 23 Kentucky Class for settlement purposes only.  Named Plaintiff Matthew Smith is **APPOINTED** as the class representative of the Rule 23 Indiana Class for settlement purposes only.

5.       David W. Garrison, Joshua A. Frank, and Nicole A. Chanin of Barrett Johnston Martin & Garrison, PLLC, are **APPOINTED** as Class Counsel for settlement purposes only.

6.       The proposed Settlement is **PRELIMINARILY APPROVED**.

7.       The attorney's fees, costs, and service awards provided for in the proposed Settlement are **PRELIMINARILY APPROVED**.

8.       The proposed notice plan is **APPROVED**, and the Settlement Administrator is **DIRECTED** to distribute notice in accordance with the notice plan.

9.       A Fairness Hearing is scheduled for **Tuesday, October 13, 2026**, beginning at the hour of **9:00 a.m.**, at the United States Courthouse in Lexington, Kentucky.[5]

10.     Class Counsel is directed to file a motion for final approval of the settlement and a motion for payment of attorneys' fees, costs, and expenses no later than **fourteen (14) days** prior to the Fairness Hearing.

Dated:  May 15, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky

---

[5]       It is likely that this matter will be reassigned to another judge within the district prior to the date set for the Fairness Hearing.  As a result, the date is subject to change following reassignment.